Good morning. May I please the court? My name is Martina Evans. I represent the appellant Saudia Scott. I'll start by stating, I'll reserve five minutes for rebuttal, and also I'll start by stating number one, appellant Saudia Scott was completely innocent throughout the incident. Number two, appellant Saudia Scott did absolutely nothing wrong and followed the police department officers. Number three, in her opposition to motion for summary judgment, Saudia Scott, appellant, proved each and every element of each cause of action in her amended complaint. Number four, the trial court made grievous and grave errors in its decision granting appellees motion for summary judgment. Also, the court raised issues not in evidence, failed to apply the rule of facts very much in dispute, which should have been decided by a jury only, ruled against the weight of the evidence, failed to demonstrate an absence of any genuine issue of material fact, which it must do on a motion for summary judgment, and although it was bound to view all facts in the light most favorable to the non-moving party, erred in finding against appellant. Accordingly, we respectfully request that this honorable court reverse the judgment of January 31st, 2020 on all counts and that this case be remanded. Numerous cases cited in appellant's brief all support reversal and remand. The standard of review is de novo in this diversity case, and the forum state's choice of law is Maryland. First, the trial court erred because appellant was most definitely restrained by Harford County Police Department officers and was subject to a threat of force. She could not leave Old Navy through the exit, even if it was only 10 feet away and did not consent to being restrained. Assuming there were red flags, which there were not, their red flags or probable cause would be no defense to false imprisonment. Neither appellees nor Judge Russell ever addressed red flags with respect to the false imprisonment cause of action. Assistant Manager Megan Yost's actions and inactions dispelled any red flags, although there were none. Probable cause simply is not an element of false imprisonment, the elements of which are deprivation of liberty, without consent and without legal justification. Counselor, as I understood the district court, and I think this is what you are saying, the district court on the false or shoot, which claim are we on false arrest? False imprisonment. I'm sorry, false imprisonment. Yes. And the district court relied only on a finding that no reasonable jury in this case could find that there was a restraint of liberty, right? Yes. Okay. And so is your position, this is what I want to get from you, is your position that police presence by itself will always be enough to show a restraint on liberty? Or is your position that there are sort of particular facts in this case that show that in this case, there was a restraint on liberty? Yes, Judge Harris. In fact, in this particular case, there were elements that supported restraint. Okay, what were they? First, appellant was deprived of liberty. When she was approached by Hartford County police officers, they asked for her license or identification. They all had lights on on their vehicles. They were in regulated regulation uniforms, wore badges, and had guns. What does the record show about the license, the ID? I know the district court at least thought that what it showed was that the officer asked for your client's ID, but that's it. Does the records tell us anything else about what happened with the ID? Yes, Judge Harris. In fact, the police officer, Officer Smoot, held appellant's ID for up to 20 minutes throughout the incident. He continued to ask if that was her current address or identification and information, and she responded with providing him with her updated information. She, while waiting for the of her license, he held on to it throughout the entire time. And that's in the record somewhere? It's in the affidavit provided by appellant. And he told her she needed to go back into the store, didn't he? Yes, Judge Gerbering. In fact, he said, we have a report that you were shoplifting, and this was after she had placed her bags in her trunk. When she was ready to leave, she had her day mapped out to go and meet with her landlord and her business partner, and she said, are you serious? He said, yes. And he also, Judge, excuse me, Officer Smoot, testified that this was an active police investigation. Officer Buechler, who accompanied him, walked past him and the appellant and went straight to the assistant manager, Megan Yost. They went to the rear of the Old Navy store for up to 20 minutes, viewed the video, and it was not until they returned from the back while Officer Smoot and appellant stayed right in the front of the store, and she had to stay right beside him. It was not until after they returned that Officer Smoot returned appellant's license to her. There was no way that she could leave because he told her, you have to come back. And if she had attempted to leave, she would have been in violation of Maryland laws that require that you have a license in order to drive. Is there any evidence where Ms. Turner was at that time? There is absolutely no evidence of Ms. Turner anywhere in the record or any type of testimony affidavit or any evidence where she was or any role that she played. Chelsea Turner was actually the cashier. She checked her out and knew she purchased everything and gave her a receipt, correct? That is correct, but at that time also the assistant manager, Megan Yost, was right there at the checkout watching as Chelsea Turner. Where's the affidavit that you referred to in the record, right? This was a strange record I have here, but it was filed, but you say there's an affidavit? For the appellant? Yeah. Appellant's affidavit should be at EC-91 because this was an informal papyrus case. Then the record provided the underlying documents and the affidavit should be, I believe, if I'm not mistaken, at EC-91. You don't have a printed copy? In other words, you I see an appendix here and then... I actually do, Judge Nehemiah, have appellant's deposition. I have the deposition. Mm-hmm. And her affidavit is also... Is it the deposition or is there a separate affidavit? There was a affidavit included in the record at EC-91, I believe. In the joint appendix? I apologize. In the joint appendix? Yes. I couldn't find it. I have the materials here and I have the two depositions and I have the complaint and I have the judge's opinion, but I didn't see what you're referring to. I believe the affidavits are at ECF-91. I'd be more than to provide that to the court. I just don't... Can't place my finger on the affidavit at this moment. The deprivation of liberty was also bolstered by Officer Smoot running a 28 on appellant's vehicle. She could not leave without breaking the law. If she tried, it would have required the officers to exercise their threat of force. In Henderson versus Clare's store, His Honor Andre Davis held in reversing or in denying summary judgment that detainment is without regard to distance or time. In five minutes of the security guard holding Ms. Henderson's license as well as her credit card was sufficient for purposes of detainment. And here the length of time was 10 minutes, 10 to 20 minutes. A deprivation of liberty is when a reasonable person would believe she was not free to leave. And that's Holmes versus Westfield America. An emotion for summary judgment must be denied if there's sufficient evidence of false imprisonment despite lacking evidence of physicality. Physical force is not necessary element. And that's again in Henderson. Genuine issues of material fact existed because appellant was prevented from leaving. And with respect to the length of time and the restraint and whether her license was withheld. A deprivation of liberty under Maryland law has a specific definition, doesn't it? The definition has been articulated in the case law. There's exercise of force or threat of force. Threat of force. Physicality is not required. And that's Henderson versus Clare's store Inc. And also we have a threat of force here. Yes, there is a threat of force. What was the threat of force? The threat of force was in the event that appellant was told she had to return. The police officers made it clear that this is not a threat of force. It's according to as respectfully disagree, Judge Nehemiah, according to case law in Henderson versus Holmes and Henderson versus Clare's store. Judge Andre Davis held that there was sufficient evidence of threat of force to warrant false imprisonment. And also in Holmes versus Westfield America Inc. deprivation of liberty is when a reasonable person would believe that she was not free to leave. And it does not require physicality and confinement can result from use of force or its threat, whether explicit or... I was looking at a court, not a federal case, but I was looking at the Maryland Court of Appeals cases. They talk about exercise of force and threat of force by which, in fact, the person is deprived of liberty, compelled to remain where he does not wish to remain based on the threat of force or actual use of force. That's correct. And here... That's the Maryland Court of Appeals law. That's what we're applying here. Yes. Was the officer armed? Yes. All three officers were armed. They had guns, badges, and their lights were on. Did anybody pull a gun or threaten to pull a gun? My client, the appellant, did everything. She... No, my question is, did any officer pull a gun or threaten to pull a gun? They did not explicitly. They're in their uniforms. They're in their uniforms. Yes. So, the implicit threat was inherent, was there. Because had she... Well, that means any time an officer walks up and asked to talk to somebody or tells them something, that that's a threat of force. I mean, that's... I don't think the Maryland Court of Appeals has gone that far. The cases that we cited, I respectfully disagree. But here you had asportation too. It wasn't just, I want to talk to you. No, you have to come into the store. You had to come with me and go in the store. That's more than just, I want to talk to you. You talk to me right here. No, no. He said, you need to go back in the store. That's different, isn't it? Yes, it is. I agree 100%, Judge Gregory. He required that she returned to the store. She was ready to leave. She had placed her bags in her trunk. And if she had not, it would have required all three officers to exercise their apparent threat of force. Appellee had no legal justification. She had paid for her items. Appellate, excuse me, Appellee's employee, Megan Yost, watched as she paid for them. Yet she didn't call off this investigation. And there was no consent. Because Megan Yost testified that once the officer returned Appellant back to the store, Appellant yelled, why the F-expletive did you call the police on me? There was no consent. All three elements of false imprisonment have been satisfied. Let me ask you about before, I see your time's getting short, about negligence. The Court of Appeals of Maryland has said negligence in the abstract doesn't state a cause of action. There has to be a breach of a duty, a recognized common law duty, and they labeled it tort duty. And in your brief, you say the duty of reasonable care to Scott, a business invitee, by falsely reporting her to police and allowing police to detain her. That's what you claim to be the duty imposed under Maryland law. Do you have a case that supports anything close to that? The cases I have that support that Appellee's owed a legally cognizable duty to Appellant are Doe v. Pharmacy and Upjohn and Henley v. Prince George's County. Appellee's owed the highest standard of reasonable- No, I'm not talking about the standard of care. We can talk about that too. I'm talking about the Court of Appeals has repeatedly stated that absent a duty, there is no claim for negligence. And the duty is a duty of care to the person's safety against injury. And they have described the duty at some length, and they've always described the notion that negligence in the abstract, you have to have a duty described. And you described this duty that calling the police was the breach of duty. And my question is, I couldn't find a case where that was identified anywhere in the country as a duty at common law, a tort duty. Henley v. Prince George's County describes the highest standard of duty as a customer is reasonable care, which Yost did breach. With respect to duty, neither the appellees nor the trial court judge addressed duty with respect to false imprisonment. I'm not talking about the level of care. We know that there's a duty of care to protect invitees against injury while on the premises. But my question is, the duty here is not leaving a banana peel on the thing or water on the floor or whatever other thing violates a duty of care. The duty you articulate is calling the police in a circumstance where it wasn't justified to call the police. And my question is, is there any case you have that describes that as a common law tort duty that a premises can't call the police even in unjust circumstances? That may lead to false misuse of prosecution and abuse of process and all that type of stuff. But I can't find out where a Maryland case is that a duty. And without a duty, three or four Court of Appeals cases, more than that, have said that there is no claim for negligence in the abstract. And it seems to me, you're really just alleging negligence in the abstract that she shouldn't have done that. But there's no duty you've identified that Yost breached. Respectfully, Your Honor, Yost breached a duty pursuant to Holmes v. Westfield America, Inc. not with respect to calling the police, but not thwarting the investigation after watching appellant pay for her garments. She watched her as the police approached her. She watched as the police detained appellant and questioned her. She did not cancel- Which talks about a duty in this concept in any manner. In other words, what's Holmes say? Holmes says that there's no probable cause for detention until the suspected person actually leaves and without paying, here, appellant never attended. That's a false imprisonment case, right? That is, but also federal- I'm talking about a cause of action for negligence under Maryland law. Federal first home mortgage v. Williams, asphalt and concrete surfaces, Inc. v. Perry, Maryland Clark v. Prince George's County. An employer is liable when an employee neglects to use reasonable care. An employee is liable when they neglect to use reasonable care. And that's what appellant employee Megan Yost did. That's the standard of reasonable care to protect a person from injury. But my question is, you still have to have a duty in connection with that care. A duty depends on the highest standard here, the status, which is business FIT and that's Henley v. Prince George's County. And in addition, appellee Yost was acting within the scope of her duties. Tall X-Rail v. Board of School Education. There are similar cases throughout the brief that addresses the duty, not with respect, per se, of someone who calls the police. That did not result in the harm. The harm resulted, and it's clearly in our brief on, I believe, page 30, it starts on, when Megan Yost failed to call off the investigation, when she knew appellant had not stolen anything, but had paid for everything. She testified she wanted to be proactive and preventative. Judge Russell went against his own ruling in Guy v. Performance Food, Group, Inc., where he said that evidence has to be based on personal knowledge. Yost had no personal knowledge that there was a theft, shoplifting, or any crime committed, but yet she still let the investigation go on. It's beyond the call, Your Honor. It's about this investigation that resulted in the harm. And I'm balancing my time for rebuttal. Thank you, counsel. Yes. Mr. Dunn? Good morning, Your Honors. May it please the Court, Christopher Dunn, from Decatur-Durant, on behalf of the Appalese Old Navy and Gap, Inc. I'd like to start with just saying that it's the Appalese position that the appellants have abandoned both the defamation and intentional infliction claim as it was not raised. Getting to the heart of the argument and what Judge Niemeyer was just focusing on, Maryland does require a direct restraint of the person by case law. In this case, police officer asked Ms. Scott to come back into the suit. You keep saying that. Well, you only said it once today. I'm sorry. But you say that in your brief, the word asked. But I mean, her deposition testimony, I think it was, her sworn deposition, is that the police told her she needed to go back to the store with them because they suspected her of shoplifting. And I guess I'm struggling with the position that if armed police officers approach you and tell you what you need to do because you're suspected of committing a crime, that you are actually free to do something else without any sort of implicit threat, that force would then be used against you. Judge Harris, that's taken up by the Court of Special Appeals in the Carter v. Aramak case, where the ballpark employee in Usher was in the scam of collecting yogurt cups and they were going to do something, steal yogurt and sell them. He was told he was required to go to the office. He was escorted to the office. He was told he couldn't leave the office. He was threatened with being fired. And the Court of Special Appeals said, that's not force or threat of force. And then we have the federal court coming down in 2016 in the La Pena v. Kabilam, I'm sure I butchered that name, where this was the trafficking case, where it was Judge Hazel that had the case. And the woman came over from an African country and she was basically kept as a servant in the house. And she was told she could never leave the house. She was not given the code to get back into the house. They took her passport so she couldn't leave. And the court said that may go to other accounts. But that's not the direct restraint of a person. I don't know where you're getting the direct restraint of a person. I mean, there are Maryland Court of Appeals cases making clear that deprivation of liberty has to be accomplished by violence, threat or otherwise. And there's just a lot of law, the restatement. I mean, there seems to be a sort of general understanding that when a detention is accomplished through a show of authority, either you don't need a threat, that's sufficient, or that is an implicit threat. And so I guess just as a matter of common sense, can you explain to me why you are not deprived of your liberty if an armed police officer tells you that you need to go somewhere with that police officer? I mean, just personally, I think I would worry that if I didn't do what the police officer was ordering me to do, it would be very likely that force would be used against me. And I don't mean excessive force or anything. But, you know, one way or another, I'm going with the police officer. You seem to be focusing, Your Honor, on the fact that the officer is wearing a weapon. No, I'm actually focusing mostly on what he said to her, which is you need to go with me. Okay, for question... You know what? Put aside the gun. Pretend there's no gun. You need to go with me. In what sense, when a police officer tells you that you need to go somewhere with him, is it not the case that it would be reasonable to believe that if you didn't do what he told you you needed to do, your movement would be effectuated by force? One way or another, you're going where he wants you to go. Well, we don't know what would have happened, we're speculating, if she would have said, I'm not coming in. Right, but I'm just talking about how a reasonable person would understand that. Well, the case law, if you look at these two cases I just cited, they talk about it's not enough to say you have to stay in the room, and you have to do this, and you have to do that. So... I'm not saying you have to. What do I understand? I'm saying that when he asked her to come back in... Asked her to come back in. You can't get the words the way you want to put it. The record is it said, you need to come back in here because you're suspected of shoplifting. Those are the words. Now, what does she have to do? Resist? To prove that she couldn't leave voluntarily and just ignore it? Unfortunately, that's a problem in this country, just sort of ignoring the police and trying to go about your business. Sometimes it leads to some very unfortunate situations. Well, we're talking about threat of force or threat of force. And the plaintiff testified unequivocally that the officer was polite, he was professional, that nothing he did... None of that is inconsistent with holding you there. You don't have to be rude, mean. You said, listen, you need to come with me in a very calm voice. You don't have to be rude, but you meant what you said. You need to come with me because you are suspected of shoplifting. They get your things out of the trunk and we go on. They go in. That's the facts. And all inferences would be drawn against you. But him saying simply, you need to come back in is not force or threat of force. Okay. All right. That's your position. Go ahead. And I think Judge Nehemiah hit the point on the negligence issue that there's no breach in the Henley case does not say that... So are you incorporating by reference or are you going to argue the issue about there's no due? Incorporating by reference unless you have any questions. Yeah, I do have some questions. So the reason why I guess it's very difficult to have cases like this, because this is a rare one, because this is what they said. I found the affidavit we couldn't find right there. I mean, it's right here. It's 19. And she says, I don't want to go through all of it, but she's basically, she's at the register. And she asked, she replied, it's a price... No, she said, while in Old Navy, I happened to see the super cash promotion and asked Megan, that's Ms. Yost, about it. She replied, it's a price sign. She said, no, I mean, under the price. She then explained the super cash promotion, which means if you split your purchase, you can avail yourself of cash promotion. But then she said, I then separated my purchases into two sections to take advantage of the promotion and paid for all of my items with my visa, credit card, and two separate transactions. The transactions were for $94.33, and the second one was for $79.50. I'm almost finished. As I was being rung up, I casually spoke with the cashier, that's the person who rung her up, and Megan, that's Ms. Yost, both of them, who were both at the front of the store at the register. As I gathered my bags, I wished them both have a nice day and to stay cool because it was very hot, at least 100 degrees. She did say, Alfred David said, they were both standing right there when she purchased it. And that's not a duty to protect your customers. You're going to allow your customer to leave and you're standing there to be confronted by a police officer and walk back in. I'll be from the top of my voice, wait a minute, what this lady just paid for this? And you hold her for 20 minutes and you said, that's no duty? That's your argument? That is your argument? On this effort, David, that's your argument, there's no duty, you can just pull your arm and say, well, yeah, she paid for it, but I ain't got to say nothing, let them hold it. That's really your argument? That's old David's position in this case? I'm asking you a question, is that old David's position in this case? Yes, I'll answer that question and you can say what else after that, but I want to know this. Based on that affidavit, what she said is in the record, what we have before us, is old David's position, you have no duty at all just to say, officer, whatever you did before, whatever happened before, you can just stand there, go back for 20 minutes and stand there, but the police officer has, is that the position of old David? Well, the position of old David is, your honor, that Ms. Yost called the police before it was wrung up. When she came back in with the police from the plaintiff's own testimony was, the first thing out of Ms. Yost's mouth was, I'm sorry, I'm sorry. What does that mean? That Ms. Yost thought she was- She said, that's all she said. Are you going to now put the words in her brain, what she meant? I'm sorry for what? I'm sorry for causing you all these problems that you paid for it, and I stood there and said nothing? I'm sorry for what? It's not in there, is it? And you didn't put it in further in terms of discovery, you could have put it in and said, had her say what she meant, you didn't, did you? Okay, but now you're going to tell us what it must have meant. I didn't add anything to what she said, your honor. Well, I thought you said, about to say what sorry meant that she was sorry for what? I thought you were about to tell me that you were going to explain what sorry meant. I think the inference is obvious. But you don't get any inferences here, right? We've got to follow the law, right? Yes. Well, we're talking about Maryland law, aren't we, in this case? We are. And maybe we ought to certify this to the Court of Appeals of Maryland and let them articulate whether these facts rise to the level of breaches of negligence and false imprisonment under Maryland law. What would you think about that? I'd be fine with that, your honor. So, as I understood it, the district court didn't really cut into this by thinking about duty. The district court just said it's reasonable as a matter of law to have called the police under this. He said based on, yes. Reasonable as a matter of law. And I guess I'm trying to figure out, I guess I want you to explain to me, I understand maybe how a jury could find it reasonable to call the police here. But I'm having trouble figuring out why a jury would have to find that it was reasonable. Because we're taking out, right, the whole accomplice theory. Because the district court said that's disputed. So, there's no accomplice. What we have is that, as I understand it, a woman carries a lot of one item in different sizes. There's no effort to conceal it and there's nowhere to conceal it. There's no bag. She asks a store employee some questions. She looks at the ceiling. And when someone purposely sneaks up behind her as quietly as they can, she is startled. And you're telling me that no reasonable jury could say, you know what? That's a little short of when you call the police. Whether she had a good faith basis and whether it was reasonable to call the police based on the totality of circumstances is viewed from her subjective standpoint. And what she also said was the plaintiff was acting very nervous. And the questions were, and these are my words, rapid fired. She said something, and I don't want to misquote, but said she was asking questions and she thought it was to distract her. And this is why I think it is perhaps possible that a jury could find that this was reasonable. A jury who credited that, credited those impressions, might possibly find that this was reasonable. But I don't understand how, at summary judgment, a district court could find that that would be the only reasonable outcome here, unless the district court itself was sort of drawing inferences, weighing credibility. I'm just concerned that what looks very much like a jury question was not decided by a jury. I can't speak to Judge Russell. I'm not asking you, Joe. Isn't this a jury question? It's my question. He said in his opinion, he wasn't making determinations on credibility. I know. I just don't understand. Let me ask you a different question. Slightly different take on this. The accomplice theory. And I don't want you to try to get in the judge's mind. But on the one hand, the district court says, oh, no, that's a disputed fact, whether there was ever an accomplice or not. But I don't understand how, if that's a genuine disputed fact, how that is immaterial to the negligence claim. Because Yost's deposition, that's the whole linchpin of her defense. She keeps saying over and over again, that's why she called the police. That was the primary reason. It's the accomplice she enters the store with who stole the shopping bags. It's the key fact in the case. And it's disputed. So how does that? And it's not just that. Because it's not just that there's a dispute over whether it happened. As I understand it, Ms. Scott's allegation is that Ms. Yost made the whole thing up afterwards to kind of cover herself. So it goes to her credibility also. So if that's the key fact and it's disputed, I guess I will stop speechifying. My question is sort of the same, unfortunately. Why isn't this a jury question? Because plaintiff, appellant didn't dispute that somebody else walked in and she walked in. What she disputed was they weren't together. Ms. Yost said that one picked up the phone and the other one did at the same time. Appellant said, I was talking to my friend as I walked in the store. And later in the store, I called my daughter. And what plaintiff did not, appellant did not dispute that a male customer grabbed bags and ran. I don't know if the appellant even saw that. Because according to the other facts is when the appellant was talking to Ms. Yost towards the clearance sign. So not, although not material to this. I think Judge Russell said, whether they were together or not, is not material is the way I read that. In your view, what is the material dispute effect? I don't believe there are any. Other than whether they were together or not, meaning whether it was an accomplice or just another customer. But from Megan Yost's point of view, she's getting excessive questions from somebody who's nervous while at the same time, somebody grabs store bags and runs out the store. Unless there's any other questions, I'll submit on my version. Yeah, I have one quick question. Based on how you read the record, how many minutes or whatever, how much time elapsed between the time she called and to the time she left the store, Ms. Scott left the store? Based on, you know the record, how much time? I know the record, but I don't know that answer, Your Honor. That's important, isn't it? Well, it may or may not. Because all of that doesn't matter at all. If she was standing there and saw her pay and she was talking to the police at the time, would it? Unless... And would it? If she was on the phone and knowing that she was up there paying for it, it wouldn't matter. All of this other stuff wouldn't matter, would it? Unless when she was talking to the individual, when Ms. Yost was talking to the appellant and the other gentleman grabbed the bags and ran out. Your Honor, I can't answer your question as to how many... But these are fact questions, aren't they? That you can't even answer and you should know the record. I know the record, Your Honor. But I asked you the question, how much time? Because it's in the record. Well, the only thing that's in the record is what plaintiff said about her phone calls. It was also about in terms of how many seconds occurred in terms of from the time she was on it, they made eye contact and how many seconds it was when she was up there, you don't know. I mean, how long it was or whether she was on the phone at the time making the call while she was right there paying for it or paid for it. I mean, if you don't know, you don't know, that's fine. Thank you. But you do think that's important, don't you? If she was on the phone when she was talking to the... No, if she was on the phone and Ms. Scott was going right up to the front to pay for her items, no matter what you thought before, she was standing there paying for them and on the phone at a very close period of time. She was there. Would that be important? Whether Ms. Scott was on the phone? No, no. Ms. Yost was on the phone making her call with her suspicions. No, that was before. That was not when she was paying for the items. Oh, so that was way before. She wasn't on the phone, right? She was back in the store. She was in... Oh, really? She was... But so, otherwise, so it wasn't... That was what? Two or three, five minutes? It was two or three minutes. Oh, okay. Well, I don't have enough time here, but it's in the record right here. The timing is not bad at all, but go ahead. I was wrapping up unless you have any other questions. I don't have any further because... Thank you. Yes, counsel, yes. Ms. Snow. Thank you, Your Honor. The time was two o'clock by all accounts that appellant arrived, 2.06 when Megan Yost called the police, 2.18 when appellant paid for her first purchase, and 2.19 when appellant paid for her second purchase. She was not free to leave. Well, at that point, she left and went to the parking lot, right? Only after 2.19, I think, Amaya? Right, exactly. So that the material time is from when the police arrived and took her back in. That's how long she was detained. The rest of the time was a normal transaction. That is correct. And throughout that time, the time from the time that she actually approached the line and waited in line and paid for her purchases, Megan Yost had time to call and cancel the police call, but she did not. Moreover, after appellant left, she watched as the police encountered and approached. In her deposition, she stated she watched throughout that time, did nothing. And again, you are absolutely right. The relevant time is when did any of... I will go back, excuse me. Any and all red flags are obliterated. There were none, whether she looked at the ceiling or not. What is important and crucial is the time that she left after paying for her purchases, because there was no indication of any crime. And that was made clear by Megan Yost. And she actually testified even throughout the incident that she knew there was no crime. It's so easy to go back in hindsight and collapse all the perceptions and the time periods. The perceptions, for instance, starting with the collaborator, Mrs. Yost is making these observations. Whether they ultimately turned out to be true is another question, but it's the perception that she saw. And she saw a collective set of data that caused her, while she was in the back of the store, to call the police. And she did call the police at that time. Now, everything that happened thereafter up until the time she checked out is immaterial. The only complaint she can have is that the police detained her after the call to discover whether there was actually a shoplifting violation. And they took her into the store and determined that was not so. And she left. Now, the question is, how long did that last? I don't know exactly how long that lasted. Of course. You say, what, 20 minutes or? According to appellant's testimony, 20, up to 20. According to Megan Yost's testimony, 10. However, I respect that. That's fine. I don't need to debate that at this point. But my point is, now we take those facts and then we ask, you charge two counts under Maryland law, torts. One is false imprisonment and the other is negligence. And the question is whether those facts give rise to those causes of action. There may be other causes of action, but those two causes of action. And my question is, it seems like there's a somewhat of an unwillingness to accept where the Court of Appeals is on this. And maybe we should certify this. And I ask this to other counsel. Would you be objecting to a certification to the Court of Appeals of Maryland? I believe, though, Your Honor, and I thank you for the offer, that after six years almost of this case, my client is really willing for determination. She is an indigent client. And I've been fighting diligently to help her. With respect to, we believe that our brief clearly states that with respect to both counts, regardless of the call to the police, once she paid for the purchases- I'm asking just a pragmatic question as to what a procedural question is. Would you be opposed to having this case certified to the Court of Appeals? I would have to discuss that with my client respectfully. With respect to the call to the police or any other red flags, simply red herrings by Ms. Yost and her manager, Dana Plogger, testified with respect to the standalone cause of action, negligent hiring, training, supervision, and retention. She was not competent. And she had exhibited that prior to this. And this incident, this lying incident was the final and last straw. She was immediately terminated. We have sufficiently on the briefing, even today, given factual and other evidence. And we respectfully request that this honorable court reverse Judge Russell's ruling and remand the case back. Thank you very much. Thank you, counsel. Thank you both for your arguments. Appreciate that. And again, we can't come down and shake your hands as we would like to do, but know that we very much appreciate your presence here and your arguments before the court today. And we wish you well and be safe. With that, I'll ask the clerk of court to, I guess, will be adjourned until this afternoon. Thank you. Thank you very much. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris